UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-81253-ALTMAN
MAGISTRATE JUDGE REID

SLOBODAN DRAGIC,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

The *pro se* Petitioner, **Slobodan Dragic**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, entered following a jury trial in case number 2010CF011372AMB in the Fifteenth Judicial Circuit Court of Florida, Palm Beach County.

This Cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Local Rule 1(f) governing

---

[1] Julie L. Jones is no longer the Secretary of the Department of Corrections. Mark S. Inch is now the proper respondent in this proceeding. Inch should, therefore, "automatically" be substituted as a party under Federal Rules of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

For its consideration of the petition [ECF 1]; the Court has received the state's response to this Court's order to show cause, along with a supporting appendix [ECF 11, 12]; and Petitioner's reply [ECF 14].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner raises the following grounds:

**Claim 1**: The state trial court erred by instructing the jury on heat of passion [ECF 1, pp. 4-5];

**Claim 2**: The state trial court erred in admitting a statement into evidence made by Petitioner six to eight years before the murder of his wife [ECF 1, pp. 6-7];

**Claim 3**: Counsel was ineffective in failing to present an insanity/PTSD defense [ECF 1, pp. 8-12];

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that Petitioner's motion be denied because Petitioner is not entitled to relief on the merits.

## II. Factual and Procedural History

### Charges

On October 12, 2010, the state charged Petitioner with first degree murder with a firearm. [ECF 12, Ex. 1]. Petitioner proceeded to trial. [ECF 13-1, Trial

Transcript].[2]

**Trial**

The state presented the following evidence at trial. The victim, Petitioner's wife, filed for divorce in 2010. [ECF 13-1, pp. 126-27]. Petitioner's daughter translated the court papers to Petitioner. [*Id.* pp. 120-21]. Petitioner was concerned his wife would get the house. [*Id.* p. 129].

On September 30, 2010, Enrique Gonzalez lived three houses away from Petitioner. [*Id.* p. 191]. He was standing in his driveway when he heard two shots, seconds apart. [*Id.* p. 187]. His daughter, who was in down the street, came running back towards him. [*Id.* p. 186]. Gonzalez saw a man with a gun looking towards Gonzalez's house and standing over a woman's body. [*Id.*]. Gonzalez's daughter said "daddy, daddy, the man shot the lady." [*Id.* p. 188]. Gonzalez went to help the woman, saw her face-down with blood coming out of her mouth. [*Id.* p. 196]. The woman was breathing as though she was drowning. [*Id.*].

Another neighbor, Roberta Coleman, recalled that on three separate occasions, about six years before the shooting, Petitioner said that if his wife ever left him, he would kill her. [*Id.* p. 208]. The first time, Coleman thought it was a joke. The second and third times, Coleman felt uncomfortable. [*Id.* p. 209-10].

---

[2] The first page of the trial transcript is identified as page number 617. [ECF 13-1, p. 1]. The state treats page 617 of the trial transcript as page one of docket entry 13-1 and cites to the record using this system. The Undersigned will rely on the state's numbering system.

On the day of the shooting, Coleman's daughter woke Coleman and said, "Suzana's dad[3] just shot their mother in the driveway." [*Id.* p. 212]. Coleman then heard a shot. [*Id.* p. 213]. Coleman saw Petitioner walk to his van with something in his hand and drive away. [*Id.* pp. 213-14]. Coleman went outside to help the victim and saw she had been shot in the back. [*Id.* p. 214].

The medical examiner testified that the victim had two gunshot wounds, one to her head and one in her lower back. [*Id.* p. 333]. The head wound was the cause of death. [*Id.* p. 336].

Petitioner testified on his own behalf to the following. He and the victim were married in Bosnia-Herzegovina in the early 1980s. [*Id.* pp. 386, 388-89]. They immigrated to the United States in 1999. [*Id.* p. 397]. After Petitioner opened a general contracting business, his son Darko began having problems with drugs and stole money from Petitioner. [*Id.* pp. 399-400]. Because Petitioner and the victim became afraid of Darko's friends, Petitioner bought a gun for protection and kept it in his van. [*Id.* p. 409]. He made the purchase two weeks before the victim's death, around the time he was served with divorce papers. [*Id.* pp. 437-38]. He did not know if the victim was aware he bought the gun, as they never spoke about it. [*Id.* p. 449].

As a result of his problems with Darko, he was suffering from insomnia,

---

3 Suzana is the Petitioner's daughter. *See* [ECF 13-1, pp. 120-21].

tension, a lack of appetite, and was also self-inflicting wounds. [*Id.* pp. 421-23]. When Petitioner and his wife discussed ending their marriage, he agreed to the divorce. [*Id.* pp. 423-24]. He also agreed to allow her to choose which house to keep. [*Id.* p. 425].

The night before the shooting was "one of the worst nights of [his] life" and he was unable to sleep because he was so worried about his family. [*Id.* p. 426]. When he woke up, he heard his wife arguing with Darko. [*Id.* p. 427]. Darko wanted to borrow some tools for a tile job and Petitioner took the gun out of the van so Darko would not have access. [*Id.* pp. 428-30]. After Darko left the house, Petitioner and his wife started to argue. [*Id.* p. 431]. He was angry that she had given Darko the tools. [*Id.*]. The victim was "attacking" him verbally which, for him, was "worse than being hit." [*Id.* p. 432]. Petitioner walked over to the porch for a cigarette and the victim followed, as she continued to yell at him. [*Id.*]. Petitioner felt that he "was losing [his] energy" and "losing [his] consciousness," and "felt like darkness in front of [his] eyes." [*Id.* p. 433]. He did not remember shooting his wife. [*Id.*]. He did not know how he got in his van or that the victim was dead. [*Id.* p. 435].

**Verdict/Sentencing**

The jury found Petitioner guilty as charged. [ECF 12-1, Ex. 3]. The trial court sentenced him to life in prison. [*Id.*].

**Direct Appeal**

5

Petitioner appealed to Florida's Fourth District Court of Appeal ("Fourth DCA"). [ECF 12-1, Ex. 4]. Petitioner argued that the trial court erred in (1) instructing the jury on a heat of passion defense and (2) in allowing a statement into evidence made by Petitioner six to eight years before the murder that he would kill his wife if she left him. [*Id.* pp. 9, 16]. Petitioner raises these two grounds as claims 1 and 2 in this case. On December 18, 2014, the Fourth DCA affirmed without written opinion in *Dragic v. State*, 155 So. 3d 360 (Fla. 4th DCA 2014).

### Rule 3.850 Post-Conviction Motion Proceedings

On March 18, 2015, Petitioner filed a Rule 3.850 motion for post-conviction relief in the trial court. Petitioner argued that trial counsel was ineffective in failing to present an insanity/PTSD defense. [ECF 12-1, Ex. 8]. Petitioner raises the same argument under claim 3 in this case. Relying on the state's response, the trial court summarily denied the motion. [ECF 12-1, Ex. 11]. Petitioner appealed. [ECF 12-1, Ex. 12]. The Fourth DCA affirmed without opinion in *Dragic v. State*, 227 So. 3d 591 (Fla. 4th DCA 2017) (table). Petitioner filed a motion for rehearing [ECF 12-1, Ex. 14], which the Fourth DCA denied. [ECF 12-1, Ex. 15]. Mandate issued August 11, 2017. [ECF 12-1, Ex. 16].

### Petitioner for Writ of Habeas Corpus in Fourth DCA

On September 27, 2017, Petitioner filed a *pro se* petition for writ of habeas corpus in the Forth DCA, claiming appellate counsel was ineffective for failing to

challenge the adequacy of the interpreters provided at trial. [ECF 12-1, Ex. 17]. On October 24, 2017, the Fourth DCA denied the petition as untimely. [ECF 12-1, Ex. 18].

**28 U.S.C. § 2254 Petition**

Petitioner next came to this Court filing the instant § 2254 petition on November 6, 2017. [ECF 1]. The state filed a response to this Court's order to show cause, with supporting exhibits. [ECF 11, 12]. The state concedes the petition is untimely, argues that Petitioner failed to exhaust claims 1 and 2, and addresses the merits of all claims. [ECF 11]. Petitioner filed a reply. [ECF 14].

### III.  Threshold Issues

### Exhaustion

The Respondent argues that **claims 1 and 2** are unexhausted and procedurally defaulted from federal habeas review because Petitioner failed to raise these arguments on direct appeal in state court in constitutional terms. [ECF 11, pp. 5-8]. The Respondent has waived this affirmative defense with respect to claim 3. *See* 28 U.S.C. § 2254(b)(3).

Pursuant to 28 U.S.C. 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in

federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). When it is unclear or less efficient to resolve whether the additional restriction in § 2254(d) applies, federal courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if the claim would fail under *de novo* review. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012).

Pursuant to 28 U.S.C. 2254(b)(2), the Court has authority to address unexhausted claims when a denial is appropriate on the merits. *See also Berguis v. Thompkins*, 560 U.S. 370, 390 (2010). To promote judicial efficiency, the merits of the allegedly unexhausted claims have been addressed within this Report.

### IV. Governing Legal Principles

"The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court

that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits" in the state forum, § 2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved **an unreasonable application of**, clearly established Federal law,[4] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a

---

[4]"Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *White v. Woodall*, 572 U.S. 415, 419 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102.

## V. Discussion

Under **Claim 1**, Petitioner alleges the state trial court fundamentally erred by instructing the jury on heat of passion [ECF 1, pp. 4-5]. Petitioner appears to argue that the "heat of passion" instruction suggested to the jury that it (1) was not required to find premeditation beyond a reasonable doubt in order to convict him of murder or (2) was not required to find depraved mind beyond a reasonable doubt to convict him of second-degree murder. [*Id.*].

The Eleventh Circuit has held, "A jury instruction that 'was allegedly incorrect under state law is not a basis for habeas relief.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Unlike a state appellate court, a federal

court conducting habeas review need only determine whether the challenged jury

instruction, "viewed in the context of both the entire charge and the trial record, 'so

infected the entire trial that the resulting conviction violate[d] due process.'" *Id.*

(quoting *Estelle*, 502 U.S. at 72). *See also Pinkney v. Sec'y, DOC*, 876 F.3d 1290,

1299 (11th Cir. 2017) ("As the Supreme Court and this Court have repeatedly

acknowledged, it is not a federal court's role to examine the propriety of a state

court's determination of state law.").

Although Petitioner's theory of defense was that he acted in the heat of

passion, defense counsel did not propose a jury instruction. [ECF 13-1, pp. 538-40].

However, defense counsel argued that the jury instructions should state a first-degree

murder conviction would be reduced to manslaughter if the jury found he acted in

the heat of passion. [ECF 13-1, pp. 538-545]. The state proposed a jury instruction

at the charge conference with which defense counsel disagreed. [*Id.* pp. 540-41].

The trial court ultimately crafted its own heat of passion jury instruction.

Specifically,

> It is a defense to first-degree murder if you find the killing of
> Jelena Dragic was done by Slobodan Dragic in the heat of passion. The
> killing of a person in the heat of passion is a legal concept which
> recognizes the temporary suspension and overthrow of reason or
> judgment of the Defendant by the sudden access of passion.
>
> **In such case the heat of passion negates the requirement of
> the first-degree murder that the act be done with premeditation.**
>
> In order for the Defendant to avail himself of the defense of heat

of passion there must be adequate provocation sufficient to obscure the reason or dominate the volition of any ordinary reasonable man. As a result of the provocation the Defendant's mind must be overcome with powerful emotion, such as anger, rage, sudden resentment or terror.

If you find that Slobodan Dragic killed Jelena Dragic, and that he acted in the heat of passion, you may find the Defendant guilty of second-degree murder or manslaughter.

[ECF 13-1, pp. 564-65].

It is a defense to second-degree murder if you find that the killing of Jelena Dragic was done by Slobodan Dragic in the heat of passion. The killing of a person in the heat of passion is a legal concept which recognizes the temporary suspension and overthrow of reason or judgment of the Defendant by the sudden access of passion.

**In such a case the heat of passion negates the requirement of second-degree murder that the act be done with a depraved mind**.

In order for the Defendant to avail himself of the defense of heat of passion there must be adequate provocation sufficient to obscure the reason or dominate the volition of an ordinary reasonable man.

As a result of the provocation the Defendant's mind must be overcome with powerful emotion, such as anger, rage, sudden resentment or terror.

If you find that Slobodan Dragic killing Jelena Dragic, and he acted in the heat of passion, you may find the Defendant guilty of manslaughter.

[ECF 13-1, pp. 568-69].

Defense counsel relied on these instructions during closing arguments in arguing for a manslaughter conviction:

If you look at the instructions the judge gave you, there's three places, three different places where heat of passion is mentioned. Those three

places are under excusable homicide. No one here is arguing this homicide was excusable. No one is asking you to return a verdict of not guilty. The other two places are for defense to first-degree murder and to defense for second-degree murder. Heat of passion is mentioned both times. And the instruction is exactly the same. It's a defense if you find the killing was done in the heat of passion. The killing of a person in the heat of passion is a legal concept which recognizes the temporary suspension and overthrow of reason or judgment of the Defendant by sudden access of passion. It negates the requirements of premeditation for first-degree murder, or depraved mind for second-degree murder.

[ECF 13-1, pp. 616-17].

The standard heat of passion jury instructions provides:

Also, since the "heat of passion" defense, if proven, negates the element of premeditation in the case of first-degree murder and negates the element of depraved mind in the case of second-degree murder, when the court finds there is evidence to support the defense, the jury is instructed that the State has the burden of disproving the "heat of passion" defense beyond a reasonable doubt.

*In re Standard Jury Instructions In Criminal Cases--Report No. 2013-02*, 137 So. 3d 995, 996 (Fla. 2014).

The state trial court should have instructed the jury, consistent with the standard instructions, that heat of passion "negates **the element**" of premeditation or depraved mind. Instead, the trial court instructed the jury that heat of passion negated "**the requirement** of the first-degree murder that the act be done with premeditation" and "**the requirement** of second-degree murder that the act be done with a depraved mind." [ECF 13-1, pp. 568-69].

Although the court's ultimate instruction did not exactly track the standard

jury instructions, when read as a whole, the instructions informed the jury that if it found that Petitioner acted in the heat of passion, it could convict him of a lesser offense. In fact, the court expressly stated this at the end of each instruction as follows:

> If you find that Slobodan Dragic killed Jelena Dragic, and he acted in the heat of passion, you may find the Defendant guilty of manslaughter.

[ECF 13-1, pp. 565].

> If you find that Slobodan Dragic killed Jelena Dragic, and that he acted in the heat of passion, you may find the Defendant guilty of second-degree murder or manslaughter.

[ECF 13-1, pp. 569]. Defense counsel's request that a heat of passion finding should result in a manslaughter conviction was facilitated by the above two instructions.

Petitioner's argument that the trial court failed to instruct the jury that the state had to prove premeditation or depraved mind beyond a reasonable doubt is further refuted by the record. The trial court instructed the jury on the elements of first-degree murder as follows:

> To prove the crime of First-Degree Premeditated Murder, the State must prove the following three elements **beyond a reasonable doubt**:
>
> 1. Jelena Dragic is dead.
> 2. The death was caused by the criminal act of Slobodan Dragic.
> 3. There was a **premeditated** killing of Jelena Dragic.
>
> . . .
>
> The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the

circumstances of the killing and the conduct of the accused convince you **beyond a reasonable doubt of the existence of premeditation** at the time of the killing.

[ECF 12, Ex. 2, p. 2; ECF 13-1, pp. 563-64] (emphasis added). With respect to second-degree murder, the state trial court instructed the jury as follows:

To prove the crime of Second-Degree Murder, the State must prove the following three elements **beyond a reasonable doubt**:

1. Jelena Dragic is dead.

2. The death was caused by the criminal act of Slobodan Dragic.

3. There was an unlawful killing of Jelena Dragic by an act imminently dangerous to another and demonstrating a **depraved mind** without regard for human life.

[ECF 12, Ex. 2, p. 4; ECF 13-1, pp. 563-64] (emphasis added).

The trial court's heat of passion jury instruction did not infect the entire trial in such a way that Petitioner was deprived of due process. *See Jamerson*, 410 F.3d at 688. In light of the foregoing, the Fourth DCA's rejection of this argument is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Under **Claim 2**, Petitioner alleges that the state trial court erred in admitting a statement into evidence made by Petitioner six to eight years before the murder of his wife [ECF 1, pp. 6-7]. When the defense moved *in limine* to exclude this testimony prior to its introduction, the trial court denied the motion, holding the

remoteness went to weight, not admissibility, and the probative value of the threat was not outweighed by the risk of prejudice. [ECF 13-1, pp. 163-64].

Errors of state evidentiary law are not a basis for federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted).

Here, even if admitting Petitioner's statements constituted an error, Petitioner's due process rights were not violated, even under *de novo* review. The jury heard other evidence that Petitioner's act of killing his wife was premeditated. Specifically, that Petitioner purchased a gun after receiving the divorce papers [ECF 13-1, pp. 437-38]; took the gun out of the van the morning of the murder [*Id.* pp. 428-30]; shot his wife twice, including directly in the head [*Id.* p. 333]; and after shooting his wife, Petitioner stopped and looked at Gonzalez, went in his house for a couple minutes, exited the house and got in his van, then drove off [*Id.* p. 195]. During closing argument, the state focused on this other evidence and only mentioned the Petitioner's prior statements once. [*Id.* p. 587]. Thus, even if the court erred in admitting the testimony, such error was not so fundamentally unfair as to deny Petitioner due process of law. *See Taylor*, 760 F.3d at 1295.

Applying a *de novo* review, Petitioner's arguments under claim 2 fail for the

16

foregoing reasons. *See Berghuis*, 560 U.S. at 390; *Hittson*, 759 F.3d at 1248; *Trepal*, 684 F.3d at 1109-10.

Under **Claim 3**, Petitioner alleges trial counsel was ineffective in failing present an insanity/PTSD defense [ECF 1, pp. 8-12]. Petitioner argues there was evidence to support such a defense, including that he suffered from psychotic behavior weeks before the shooting, which was caused by mental health issues, diabetes, and trauma that he suffered during service in the Yugoslavia army [*Id.*].

In Florida, to prevail on an insanity defense, a defendant must prove by clear and convincing evidence that due to a mental infirmity, disease or defect, he or she "1. Did not know what he or she was doing or its consequences; or 2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong." § 775.027(1), Fla. Stat. Diminished capacity is not a defense in Florida. *Chestnut v. State*, 538 So. 2d 820, 825 (Fla. 1989).

In this case, two psychologists evaluated Petitioner prior to trial to determine whether Petitioner was mentally ill or incompetent when he was interviewed by law enforcement after his arrest. [ECF 12-1, p. 105]. Dr. Michael Brannon, a witness for the defense, met with Petitioner for five to six hours over three days. [*Id.* pp. 97, 112-13]. Dr. Brannon testified at a deposition that there was no indication Petitioner suffered from a mental illness at the time of the shooting. *See* [*Id.* pp. 115- 16].

Further, Petitioner gave a statement to law enforcement three hours after the shooting which does not reflect that Petitioner was suffering from a mental illness and/or did not understand the consequences of his actions. [ECF 12-1, Transcript of 9/30/10 PBCSO Interview of Petitioner, pp. 258-369]. During the course of the statement, Petitioner never indicated that he lacked sufficient mental capacity to know and understand what he was doing or that he did not know and understand that his conduct was wrong. He did not claim that he had ever sought or received treatment for a mental illness or was suffering from any of the symptoms set forth in the instant petition. In contrast, Petitioner's statement reveals that he knowingly and intentionally shot his wife.

During the interview, Petitioner provided a clear and detailed rendition of the events leading up to and surrounding the shooting. . [*Id.* p. 286-87, 289-90, 298, 302-03, 306-07, 318-19, 332-33, 336-37]. After he shot his wife, he went back inside to turn off the lights, then he left in his van to go buy beer. [*Id.* p. 318]. He pulled over at a park and called his niece, telling her he killed his wife. [*Id.* p. 303]. He then started to write everything down when he saw the police approaching. [*Id.* pp. 310-11].

In light of the foregoing, it was not unreasonable for counsel to conclude an insanity defense was not viable. Based on the salient record, counsel likely made a strategic choice to present a heat of passion defense. Strategic choices made after

thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91. Nothing in the record supports the conclusion that Petitioner did not know what he was doing when he shot his wife or that he did not know shooting her was wrong. *See* Fla. Stat. § 775.027(1). Petitioner also cannot establish prejudice, as counsel cannot be deemed ineffective for failing to raise a tenuous argument. *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir. 1984) ("Trial counsel certainly cannot be deemed to have been ineffective for failing to raise [a] tenuous objection."). *See also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

The trial court's order rejecting this argument in denying Petitioner's Rule 3.850 motion, which was affirmed on appeal, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

## VI. Cautionary Instruction Re *Clisby* Rule

Finally, this Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the

extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## VIII.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison*

*v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

### IX. Conclusion

Based upon the foregoing, it is recommended that:

1.      the federal habeas petition be DENIED;

2.      a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Court Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *RTC v. Hallmark*

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 22nd day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   **Slobodan Dragic**, *Pro Se*
      DC# B12673
      South Bay Correctional Facility
      Inmate Mail/Parcels
      600 U S Highway 27 South
      South Bay, FL 33493-2233

      **Luke Robert Napodano**
      Office of the Attorney General
      1515 North Flagler Drive
      Suite 900
      West Palm Beach, FL 33401
      561-837-5000 x179
      Email: luke.napodano@myfloridalegal.com